# CASES DETERMINED

AT THE

# January Term, 1922.

NELSON, Respondent, vs. PAULI, Appellant.

*December 13, 1921—January 10, 1922.*

*Automobiles: Pedestrian waiting for street car: Contributory negligence: Damages: Broken ankle: Gratuitous medical services: Trial: Pleadings as evidence: Argument as to effect of jury's answers: Harmless error: Special verdict: Question as to unavoidable accident.*

1. In an action by a pedestrian for injuries sustained by being run down by defendant's automobile, which was attempting to pass another automobile at a point where plaintiff was waiting for a street car, an answer in a special verdict that plaintiff was not negligent is *held* to be amply sustained by the evidence.

2. A verdict of $10,000 in favor of a motorman sixty-three years of age and having a life expectancy of twelve years, while high is not excessive, where it appears he sustained a painful injury to his ankle which left a stiffened joint and a shortened limb with no chance of substantial improvement, and that besides incurring a large expense for medical and hospital service plaintiff had up to the trial sustained a loss in wages of $2,000.

3. Admissions contained in the pleadings of the opposite party may be read to the jury in the argument of counsel without having been specially offered and admitted in evidence.

4. The defendant was not prejudiced by the refusal of the court to permit an allegation in plaintiff's complaint, that it was dark at the time of the accident, to be read to the jury on the ground that it constituted an admission that it was dark at such time, the word "dark" being a relative term and not necessarily meaning the entire absence of all light or ability to see things.

5. In answering questions submitted to them it is no part of the function of the jury to determine what effect their answers will have upon the final outcome of the trial; but misconduct

of plaintiff's attorney in informing the jury that if they answered "Yes" to a question as to whether plaintiff was guilty of contributory negligence he would have no claim against the defendant was not prejudicial, where the court fully sustained objections of defendant's counsel thereto and fully admonished the jury, plaintiff's case possessing unusual strength and merit upon the question of contributory negligence.

6. Where the vital questions involved were the negligence of the defendant, proximate cause, and contributory negligence, it was not prejudicial error to refuse to submit to the jury, as a part of the special verdict, the question "Was plaintiff's injury due to an unavoidable accident?"

7. An instruction, "You will also consider the reasonable value of the medical services which the plaintiff received," was not prejudicial in that the evidence disclosed that plaintiff received gratuitous services from certain doctors connected with a mutual benefit association of which he was a member, where only the value of the services of the doctor he hired to treat him was properly proved on the trial and the jury were instructed that they should name such sum as would compensate the plaintiff, as it could not consistently be claimed that the jury either considered or made any allowances for services rendered by the physicians rendering the gratuitous services.

APPEAL from a judgment of the circuit court for Milwaukee county: JOHN J. GREGORY, Circuit Judge. *Affirmed.*

Action for personal injuries. The appeal is from a judgment in favor of the plaintiff and against the defendant for the sum of $10,376.79, damages and costs.

The following appears from the evidence: Downer avenue is a public street in the village of Shorewood, Milwaukee county, running north and south, and is intersected at right angles by Edgewood street towards the south and Morse avenue towards the north. The width of Downer avenue from curb to curb is forty-five feet, and the length of the block from the north curb of Edgewood to the north curb of Morse avenue is about 350 feet. Located on Downer avenue between the intersecting streets above referred to is a single street-railway track used by the Milwaukee Electric Railway & Light Company on which to propel its electric cars for passenger traffic. There is a distance of about

fourteen feet from the west rail of said track to the west curb of Downer avenue, and a distance of about twenty-five feet from the east rail of said track to the east curb of said Downer avenue.

Plaintiff was a motorman of the age of sixty-three years and had been employed as such by said street railway company for a period of about twenty-two years. On the 19th day of November, 1919, at about 5:45 p. m. of that day, he was standing on the walk near the southeast corner of Downer avenue and Morse avenue, intending to board a Downer avenue car going north. In looking towards the south he saw a street car, headed towards the north, stopping at the near crossing of Edgewood, and as the car started he proceeded to walk out into the street towards the track, and there stopped awaiting the approach of the car, and at that time the car had arrived at a point about three car-lengths south of where plaintiff stood. A number of automobiles were traveling northward alongside of the street car as it left Edgewood, and as these autos approached Morse avenue the plaintiff observed that the car which preceded the others was an electric.

The defendant, as the street car left Edgewood, drove his seven-passenger auto in the rear of the electric, which was proceeding northward between the track and the east curb. When the north-bound street car had arrived at a point about one car-length south of the south crossing of Morse avenue, the defendant, who was driving his car at the rate of about eighteen miles per hour, in order to pass the electric auto steered his car towards the northwest immediately in front of and in close proximity to the street car, and then towards the northeast, so as to proceed along on that portion of Downer avenue lying east of the street-car track. When the defendant, in the effort to pass the electric auto, swerved his car towards the northwest, the plaintiff was standing at a point about two to three feet east of the east rail of the street-car track, and it was testified to

by him that when he saw defendant's car headed towards the northwest he concluded that it was the intention of the driver to proceed in that direction, and in that event there would be no danger whatever to him at the point where he was then standing.   The plaintiff had just observed the motion of defendant's car in a northwesterly direction, when suddenly and unexpectedly he observed the same being turned to the northeast so that he would be directly in the path of defendant's car.   In an effort to escape from the danger which then apparently confronted him he moved rapidly towards the west and almost succeeded in clearing the pathway of defendant's approaching car, but was struck by the left fender, as the result of which he suffered a severe injury to his left leg, causing a number of fractures in and around the ankle and the lower shin bone and in and about the ankle joint.   On account of the nature of the injury it was impossible to set the limb, and the attending physicians concluded to and did operate at the point of the injury, and then found numerous splinters and pieces of broken bones, many of which they removed.   The good ends of the broken bones were then wired, after removing as many splinters as possible, and as the result of the mashed condition of the injured limb and the dead tissues around the injury an infection set in which gave the medical attendants considerable cause for apprehension, but which was finally allayed. As the result of the injury the injured ankle has become permanently stiffened.

Dr. Differt, one of the attending physicians, testified that in his opinion there is no chance for substantial improvement of the injured limb as to action or movement, and that from time to time while the physicians visited the plaintiff he found pus exuding from the injured portion of the limb and that small portions of bone were expelled.

Plaintiff testified that he still suffers considerable pain, and it appears that the limb is shortened one and one-half to two and one-half inches.   At the time of the accident plaint-

iff was earning $5.64 a day, and his monthly earnings were between $160 and $165. According to the evidence introduced, the mortality tables show that plaintiff at sixty-three years of age has an expectancy of life of about twelve years.

There is no substantial or material conflict in the evidence as to the manner in which the injury occurred. No signal was given by the defendant preceding the accident. At the time of the accident it was not very dark and the lights were lit on the automobiles, and there was a light from Edgewood street, and the street car was also lighted.

The case was submitted to the jury on a special verdict, which found (1) that the defendant failed to exercise ordinary care in the management and control of his automobile at and immediately prior to plaintiff's injury; (2) that such failure was the proximate cause of the injury; (3) that the plaintiff was not guilty of a want of ordinary care which proximately contributed to produce the injury; and (4) damages in the sum of $10,000.

After verdict the defendant's counsel moved to change the answer of the third question of the special verdict from "No" to "Yes," and for judgment upon such verdict as so changed. The refusal of the court to grant such motion constitutes defendant's first assignment of error.

For the appellant there was a brief by *Glicksman, Gold & Corrigan,* attorneys, and *Walter D. Corrigan,* of counsel, all of Milwaukee, and oral argument by *Mr. Corrigan.*

For the respondent there was a brief by *Van Dyke, Shaw, Muskat & Van Dyke* of Milwaukee, and oral argument by *James D. Shaw.*

DOERFLER, J. We have carefully examined the evidence in the case and are convinced that the answer of the jury to the third question of the special verdict was amply sustained thereby. When plaintiff left the curb near the southeast corner of Downer avenue and Morse avenue he proceeded to occupy a place upon the highway usually occupied

by pedestrians when intending to board a street car.   The
street-car track was west of the center of Downer avenue,
and the distance between the east rail and the east curb of
the street was fully twenty-five feet.   There was ample
space for automobiles to pass at least two abreast north on
the avenue without in any manner interfering with plaint-
iff's safety while he was standing two or three feet east of
the east rail of the track awaiting the approach of the street
car.   It is also quite clear that if the plaintiff had not
assumed the position on the highway preparatory to entering
the car when he did, and had waited at or near the curb until
the string of automobiles approaching had fully passed,
there might have been danger of his missing the street car.

The defendant was aware that the street car had stopped
at Edgewood, and the evidence shows that in order to per-
mit passengers to be discharged from or to board the car
at that point he was obliged to stop his car in the rear of the
electric auto.   He knew that the street car was proceeding
northward from Edgewood to Morse avenue and that there
were a number of other autos proceeding northward on the
right-hand side of Downer avenue.   He was familiar with
the location of the streets, as he had lived in that locality for
a considerable number of years.   It must be presumed that
he knew, and undoubtedly he did know, that there was a
likelihood of the street car coming to a stop as it approached
Morse avenue for the purpose of permitting passengers
either to board or alight from the car, and that in order to
take passage upon the car it would be necessary for a pedes-
trian to stand in close proximity to the car at a point where
it is usual and customary for pedestrians to stand under like
circumstances.

The plaintiff, therefore, was duly justified in occupying
the position he did preparatory to boarding the car, and,
whether or not he knew of the approach of the defendant's
auto immediately in the rear of the approaching electric auto,
he had a right to assume that the defendant in the operation

of his car would not make the sudden and decisive turn first towards the northwest in endeavoring to pass in close proximity the moving street car and the electric auto, and then suddenly turn his machine towards the northeast so as to place the plaintiff in the direct pathway of his approaching car. In fact, it appears to us quite clearly that the action of the defendant in so steering his car resulted in placing the plaintiff in a dangerous trap, from which it was difficult to extricate himself without great danger of sustaining injury. No signal was given by the defendant to warn the plaintiff of the approach of his car. Under these circumstances it would almost appear as though the plaintiff was free from contributory negligence as a matter of law. In any event the evidence is strong in plaintiff's favor, tending to prove his freedom from contributory negligence; and the jury having acquitted the plaintiff of the charge of contributory negligence, we cannot, under the numerous decisions of this court, set aside the answer of the jury to the question of the special verdict in that behalf. *Vetter v. Southern Wis. R. Co.* 140 Wis. 296, 122 N. W. 731; *Friedrich v. Boulton,* 164 Wis. 526, 159 N. W. 803; *Ludvigson v. Superior S. B. Co.* 147 Wis. 34, 132 N. W. 621.

Defendant's counsel also moved, for reasons hereinafter named, to set aside the answers to the questions of the special verdict and to grant a new trial:

*First,* because the jury's answer to the third question of the verdict was perverse and against the overwhelming weight of the evidence. This matter has already been amply covered in this opinion by what has heretofore been said and therefore requires no further consideration.

*Second,* because the damages were so excessive as to indicate such a degree of perverseness as to invalidate the entire verdict.

In determining whether the damages are excessive, each case must in a large degree stand upon the facts therein adduced. It is true that where a state of facts exist in a case

which are similar to the case under consideration, the rulings of a court may be of great value in guiding the judicial mind in the determination of the question as to whether or not the damages are excessive. The evidence in this case shows that plaintiff sustained a very severe and painful injury; that the injury resulted in a permanent disability; that he suffered not only considerable pain, but that at the time of the trial he was still suffering great pain, and that his limb was in a condition which needed considerable attention by reason of the fact that from time to time pus would be exuded from the injury and small broken pieces of bone would be expelled therefrom. At the time of the trial in the lower court he had already sustained an actual loss in wages amounting to about $2,000. He incurred a considerable bill for medical and hospital attendance. He was sixty-three years of age, and, according to the tables of mortality, had an expectancy of life of twelve years.

In the case of *Hommel v. Badger State Inv. Co.* 166 Wis. 235, 165 N. W. 20, where the plaintiff was sixty-two years of age and sustained injuries somewhat similar to those of the plaintiff in this case, and where the evidence showed that she had an earning capacity of $800 per annum, it was declared that it requires from $4,000 to $5,000 to provide an annuity of $800 for a person having an expectancy of twelve years. The verdict in the *Hommel Case* was sustained on an appeal to this court. If to purchase an annuity entails the expenditure of the sum of $4,000 for one having an expectancy of twelve years, where the earning power does not exceed $800 per annum, it certainly cannot be claimed that the amount awarded for loss of earnings in the instant case is excessive. While it appears to us that the amount awarded is high, nevertheless the award of damages is peculiarly within the province of the jury, and unless the verdict is such as to create the belief that the jury was misled by passion, prejudice, or ignorance, this court will not interfere therewith. *Flannigan v. Stauss,* 131 Wis. 94, 111 N. W. 216.

*Third,* because defendant's counsel was not permitted to read from plaintiff's complaint during the argument to the jury.

Can admissions contained in the pleadings of the opposite party in an action be read to the jury on the argument of counsel without having been specially offered and admitted in evidence? In the instant case defendant's counsel, in his closing argument to the jury, attempted to read a portion of plaintiff's complaint wherein it was alleged in substance that at the time of the happening of the injury the hour was about 5:45 p. m. and that it was dark. A number of witnesses on the trial testified that they could see the plaintiff for some considerable distance. Plaintiff's own testimony as to the degree of light or darkness prevailing at the time is somewhat in conflict. The defendant claimed that at the time of the happening of the injury it was dark; in fact, so much so that he did not see the plaintiff until he appeared coming out from the front of the electric auto. Defendant's counsel therefore claim that there being an allegation of plaintiff on the subject in his complaint, and inasmuch as the pleadings in an action constitute the fundamental basis upon which the cause of action rests, which allegations it is contended must be construed as verities against the one pleading, it was error not to permit counsel to read the portion of the pleading above referred to during the course of the argument.

"When a fact is admitted upon the pleadings, no proof respecting it need be introduced, and it may be presented to the jury as part of the evidence in the case." 31 Cyc. 214. See, also, 21 Ruling Case Law, p. 607, § 151; *Weinhagen v. Hayes,* 174 Wis. 233, 178 N. W. 780, 183 N. W. 162.

Plaintiff's counsel cite the case of *Folger v. Boyinton,* 67 Wis. 447, 30 N. W. 715; but in that case the original complaint had been materially amended. In the opinion in the case last cited this court said: "To read that complaint to the jury would not be reading any part of the pleadings in the cause."

It is our opinion that defendant's counsel is right in his contention, and that such pleadings were in evidence as much as the evidence adduced from the mouths of the witnesses attending upon the trial.

It therefore follows that the refusal of the court to admit the reading of such admissions in the pleadings may in some cases constitute prejudicial error which would work a reversal. However, the word "dark" is but a relative term. We speak of a day as a "dark day," meaning a cloudy day; a day without sunlight. In common parlance we speak of the time of the day when one can see without the aid of artificial light as day-time, and distinguish it from nighttime on that basis. When the time arrives in which things cannot be seen clearly without the aid of artificial light, we say that it has become dark. Darkness does not necessarily mean the entire absence of all light or ability to see things. In fact, such a condition seldom prevails. So that when the pleader, in the allegation referred to, declares that the accident happened at a certain time and that it was dark, he intended to convey the idea that a time had arrived during the day when it was necessary in a large degree to see things by the aid of artificial light. We often hear the expression "It was dark, but I could see an object a distance of one, two, or three hundred feet," and on other occasions we say, "It was so dark that one could not distinguish an object in close proximity;" all of which conclusively proves that the use of the word "dark" involves a relative expression. It was therefore for the jury to determine from all the evidence in the case the extent of the absence of light at the time of the happening of the injury, and the refusal of the court, therefore, to permit the reading of the portion of the complaint referred to did not constitute prejudicial error.

*Fourth*, because of improper argument of plaintiff's counsel to the jury.

During the course of the argument of plaintiff's counsel to the jury on the subject of the third question contained in

the special verdict, it was contended by defendant's counsel that he made the statement that, if the jury answered question number 3 "Yes," plaintiff would have no cause for action. Upon objection being made to such alleged argument by defendant's counsel, plaintiff's counsel, in an effort to correct defendant's counsel's statement, contended that he did not say that plaintiff would have no cause for action if the jury answered this question by "Yes," but that he did say he would have no claim against the defendant. The court thereupon sustained the objection of defendant's counsel and admonished the jury to disregard the remarks of plaintiff's counsel. The court further added: "You will answer the questions, gentlemen, according to the instructions given you by the court later on, without regard to what may be done with the case after the court has received your verdict."

In accordance with the statutes permitting the submission of a special verdict to a jury, it is contemplated that the jury be required to answer certain questions submitted to them upon the evidence in the case and in accordance with the instructions of the court. It is no part of the jury's function to determine what effect its answer will have upon the final outcome of the trial, and in fact juries are instructed to answer the questions of the special verdict without regard to what effect their answers will have upon the final result. This is the policy of the law as viewed by the authorities wherever special verdicts are in vogue. Such policy is well known to all attorneys engaged in the trial of cases. A violation of this well known policy on the part of an attorney involves an effort on his part to procure from a jury an answer to a question not in accordance with the evidence, but in accordance with the ultimate effect which an answer may have upon the final outcome of the trial.

Such misconduct on the part of counsel, if wilful, can only be designed with a view of procuring a favorable answer to the question of the special verdict, based not upon

the evidence but upon the final result. The office of an attorney at law is essential in the administration of justice under our judicial system. He is held by some courts to be a *quasi*-judicial officer, with a dual function, namely: first, to aid in the administration of justice, and second, to represent the interests of his client. An attorney so transgressing the fundamental policy of our system of jurisprudence is not aiding the administration of justice. We therefore consider that such infractions of counsel, constituting an abuse of their powers, is a very serious matter, and one which in many instances works a reversal of the judgment. However, in the instant case the court fully sustained the objections of defendant's counsel and fully admonished the jury. Under similar circumstances in the case of *Behling v. Wis. B. & I. Co.* 158 Wis. 584, 149 N. W. 484, this court has held that the error was cured.

We do not wish to be understood, however, that in a close case, where there is but a slight preponderance of the evidence, we would not seriously consider such an assignment of error and reverse the case solely upon such ground. As already stated in this opinion, plaintiff's case possesses unusual strength and merit upon the question of contributory negligence, and under all the facts and circumstances in the case we hold that the error committed is not prejudicial.

The defendant requested the court to submit the following question as a part of the special verdict: "Was plaintiff's injury due to an unavoidable accident?" The refusal of the court to comply with defendant's request constitutes the *fifth* assignment of error.

There are negligence cases where such a question might properly be submitted to the jury as involving an ultimate fact essential in the determination of the issues presented. We are, however, of the opinion that the instant case is not such a one. The vital questions involved in this case are, first, the negligence of the defendant; second, the proximate cause; and third, contributory negligence.

Nelson v. Pauli, 176 Wis. 1.

In *Kellner v. Christiansen*, 169 Wis. 390, 395, 172 N. W. 796, where the submission of a similar question was requested by defendant's counsel, this court, Mr. Justice SIE-BECKER rendering the opinion, held:

"The inquiry whether the plaintiff's injuries were the result of mere accident for which no one was responsible was necessarily included in the questions covering defendant's negligence and the question of its being the proximate cause of plaintiff's injuries. In view of this, the proposed inquiry was covered by the findings of actionable negligence and proximate cause."

In accordance with what has been said on this assignment of error, and the former rulings of this court, we hold that the refusal to submit the proposed question did not constitute prejudicial error.

*Sixth.* The sixth assignment of error raises the question whether the court erred in instructing the jury as follows: "You will also consider the reasonable value of the medical services which the plaintiff received."

Plaintiff was a member of a mutual benefit association and received the services of Doctors Lemon and Miller gratuitously. The evidence in the case shows that the only medical services contracted for by the plaintiff were those rendered by Dr. Differt, and the value of his services was properly proven on the trial. There was no evidence introduced as to the value of the services of the other medical practitioners, and the record does not disclose that any claim for such services was made by them. In no event could the plaintiff receive compensation for the services of these two doctors, in view of the fact that they were paid for by the association mentioned. *Gatzweiler v. Milwaukee E. R. & L. Co.* 136 Wis. 34, 116 N. W. 633; *Dillon v. Hunt,* 105 Mo. 154, 163, 16 S. W. 516. Furthermore, the trial court instructed the jury on the subject of damages that they were to name such sum as would compensate the plaintiff, which in plain parlance means a sum that will make him reasonably whole, under all the facts and circumstances in the case. It can-

not consistently be claimed that the jury, under the evidence in this case, either considered or made any allowance for services rendered by these two physicians.

*Seventh.* A further exception was taken to the charge of the jury on the subject of credibility of witnesses. We have carefully examined the charge of the court in that regard and find no error in the instructions which requires further consideration.

From the foregoing we hold that the judgment of the circuit court must be affirmed.

*By the Court.*—Judgment affirmed.