WEST, by guardian *ad litem*, Respondent, vs. DAY, Appellant. WEST, Respondent, vs. DAY, Appellant.

*February 7—June 20, 1927.*

*Automobiles: Pedestrian crossing street at intersection: Assumption that automobiles will proceed with ordinary care: New trial: Discretion of court: Rebuttal testimony: Damages: Question for jury: Permanent disability of foot of young girl: Father's loss of services.*

1. Evidence that a thirteen-year-old girl, crossing a street with two younger sisters, who was struck by an automobile when five or six feet from the curb, saw no automobile coming within half a block, when she looked and then proceeded to cross, does not show that she was guilty of contributory negligence as a matter of law. p. 190.

2. A pedestrian when crossing a street has the right to assume that automobiles which he sees approaching are proceeding with ordinary care, and may act on the assumption that he can safely proceed. p. 189.

3. A motion for a new trial is addressed to the sound discretion of the trial court, whose action thereon will not be disturbed on appeal in the absence of an abuse of such discretion. p. 193.

4. The trial court, on refusing a motion for a new trial because of newly-discovered evidence, consisting for the most part of rebuttal testimony on a collateral matter, is *held* not to have abused its discretion. p. 194.

5. The amount of damages to be awarded for personal injuries is peculiarly a question for the jury. p. 195.

6. A verdict of $12,000 for injuries sustained by a thirteen-year-old girl, consisting of contusions of the head, limbs, and body, with fractures of the collar bone and the malleolus fibula bone and a compound dislocation of the fibula bone and ankle joint, creating a fifty per cent. permanent disability of the foot, is *held* not excessive. p. 195.

7. A verdict of $1,500 damages to the father for injuries to his daughter is *held* not excessive where the proof disclosed that he had incurred expenditures of $1,035 for hospital, medical, and surgical expenses. p. 195.

APPEALS from judgments of the circuit court for Fond du Lac county: CHESTER A. FOWLER, Circuit Judge. *Affirmed.*

For the appellant there were briefs by *Quarles, Spence & Quarles* of Milwaukee, attorneys, and *Reilly & O'Brien* of Fond du Lac, of counsel, and oral argument by *Arthur B. Doe* of Milwaukee and *J. E. O'Brien.*

For the respondents there was a brief by *L. J. Fellenz,* attorney, and *T. L. Doyle,* of counsel, both of Fond du Lac, and oral argument by *Mr. Fellenz.*

The following opinion was filed March 8, 1927:

OWEN, J. These are actions, one by the father, the other by the injured infant, to recover damages for injuries sustained by *Orion West,* an infant, as the result of an automobile collision. They were consolidated for purposes of trial, were argued together in this court, and will be disposed of in a single opinion.

On the 10th day of March, 1925, the plaintiff *Orion West,* thirteen years of age, with her two younger sisters, was walking west on the north side of Rees street in the city of Fond du Lac. While crossing Main street, a street running north and south and intersecting Rees street, they were struck by defendant's automobile, and the plaintiff *Orion West* was severely injured. By a special verdict of the jury the defendant was found guilty of negligence. The plaintiff

*Orion West* was exonerated of contributory ·negligence. Judgment was rendered in favor of the plaintiff in each action, and the defendant appeals from both judgments.

It is first contended that the plaintiff *Orion West* was guilty of contributory. negligence. She testified that before proceeding to cross the street she looked in both directions and, seeing no danger, proceeded with· her sisters across the street. They were walking hand in hand, *Orion* being to the right, or north, of the other two. As she reached the center of the street she again looked to the north for the approach of automobiles coming from that direction. She saw a number of automobiles coming from the north, but they were well up towards the middle of the block. She concluded that there was plenty of time for them to proceed in safety across the street, and they continued on their course. About five or six feet from the west curb they were struck by defendant's automobile.

In *Brickell v. Trecker,* 176 Wis. 557, 186 N. W. 593, it was held to be the duty of a pedestrian not only· to look before crossing a street for approaching automobiles and other traffic, but reasonable care also required that upon reaching the center of the street he or she should look for automobiles coming in the· opposite stream of traffic. In view of the testimony of *Orion West* and the verdict of the jury it must be assumed that she complied with this requirement. Upon looking, she admits that she saw automobiles coming from the north, but, believing that she had ample time to cross the street, she proceeded on her way. She saw automobiles coming, but they were at least half a block away. If a person may not safely proceed to cross a street when there are no automobiles within half a block without being guilty of contributory negligence, then indeed the crossing of a busy city street becomes a dubious undertaking. She had a right to assume that the automobiles which she saw were proceeding with ordinary care, and to act upon the assumption that

she could safely proceed.    There is nothing to the contention that plaintiff was guilty of contributory negligence as a matter of law.

Error is assigned because the trial court refused to grant a motion for a new trial.    This motion was based on newly-discovered evidence and supported by numerous affidavits. Marjorie Stubbe deposed that she was crossing the street at the same time that the West children were crossing; that she stopped in the center of the street and looked to the north, and that at the same time *Orion West* and her two sisters stopped beside her; that deponent continued on her way across the street, but that the children fell behind, and that they were struck by the defendant's car by reason of their lingering in the street.    She also details other circumstances with reference to the accident, and says that she refused to give the defendant *Day* her name.

One John Twohig testified upon the trial that just before the accident he was riding south on Main street, traveling fifteen or eighteen miles an hour; that there was a car ahead of the car in which he was riding, with an Illinois license plate, proceeding in the same direction; that in the block between Johnson and Rees streets the defendant drove his car to the left of the Twohig car, passed the Twohig car and the Illinois car, and, in order to avoid a street car coming from the south, cut in short ahead of the Illinois car, and that was just before the children were struck.    That when he passed the Illinois car he was going twenty-five miles an hour.

The motion for a new trial was supported by the affidavits of John E. Schmitz and Peter O'Connor, who deposed that they were occupants of the same car in which Twohig was riding at the time referred to in his evidence; that the car was a Ford coupé, and was owned and driven by Schmitz; that the testimony of Twohig was incorrect and untrue in that the *Day* car did not pass their car in the block between Johnson and Rees streets, and that there was no street car

going north on Main street at Rees street, or in the block between Johnson and Rees streets, but that there was a street car going north on Main street, in about the center of the block, between Rees and Merrill streets; that as the defendant's car approached Rees street he put out his left hand as if to signal a left turn, and before striking the children turned the car sharply to the right; that the car in which deponents were riding stopped about twenty feet south of the south line of Rees street; that Twohig got out of the car, stood beside it for a minute or two, and did not go back to the scene of the accident, but got in the car with deponents and drove south on Main street; that nothing was said by Twohig at said time as to who was to blame for the accident, or that defendant was to blame, or that the *Day* car passed the car of deponents. They further state that the foregoing facts were told by deponents to counsel for plaintiff on the day of the trial, after they had been subpoenaed and they were informed that they were dismissed and need not appear as witnesses.

In rebuttal of these affidavits L. J. Fellenz, one of the attorneys for the plaintiff, deposed that on Tuesday evening preceding the trial John Twohig and Peter O'Connor came to his office and that he requested both Twohig and O'Connor to relate what they knew concerning the accident; that thereupon Twohig told in the presence of O'Connor, in substance, the same story that was told by him upon the witness stand, and that in the presence of O'Connor said Fellenz cross-examined Twohig relative to certain statements made, and that he insisted that those were the facts as he knew them to be; that the said O'Connor heard the entire statement of Twohig, and after such statement on the part of Twohig, Fellenz interrogated O'Connor as to whether the statement made by Twohig was to his knowledge substantially correct, whereupon O'Connor made one correction concerning the speed of defendant's car, and that was the only correction

which O'Connor suggested with respect to the testimony of Twohig at that time.   He further deposed that thereafter he did not further interview either O'Connor or Twohig regarding their presence as witnesses until the evening preceding the trial of this action; that evening he notified O'Connor and Schmitz to come to his office, as he had no opportunity to talk with Schmitz; that on the morning of the trial O'Connor and Schmitz gave to affiant a statement which varied in some respects from the testimony given by Twohig; that said Fellenz had arranged with Mr. Doyle, of counsel in said action, for the examination of Messrs. Twohig, Schmitz, and O'Connor during the said trial; that during a recess of the court said Fellenz and Doyle interviewed all three witnesses together as to what they saw, and said Twohig was firm in his statement as to just what happened, whereas O'Connor and Schmitz indicated that they did not pay close attention to what happened, and were not positive of the facts; that it was thereupon decided to use only the witness Twohig upon said trial, and Schmitz and O'Connor were told that their services were no longer needed; that thereupon plaintiff's counsel used Twohig as a witness upon the trial; that his testimony was taken sometime prior to the noon hour of the day of trial, and that plaintiff's case was rested at about 11:30 o'clock in the morning of that day.

In rebuttal of the Schmitz and O'Connor affidavits T. L. Doyle, Esq., deposed that he was of counsel for plaintiff in said actions; that he interviewed Twohig, Schmitz, and O'Connor at a recess of the court on the day of trial; that upon that occasion Twohig stated the circumstances to be the same as those testified to by him; that his statement was made in the presence of Schmitz and O'Connor; that both Schmitz and O'Connor said that they did not recollect that *Day's* car passed their car as stated by O'Connor, but said they were not paying particular attention, and that the *Day* car might have passed them, and been handled and traveled

in the manner related by Twohig, but they were not paying any attention and did not observe it; that affiant understood that their testimony would be of a negative character to the effect that they were not paying attention and did not see what took place, and stated to Fellenz that the only one of them that seemed to have been paying attention and to know what happened was Twohig, and Schmitz and O'Connor were told that they would not be needed as witnesses.

The affidavit of L. Marg was also presented, in which he deposed that he and John McFarland were following the Schmitz car on Main street just before the accident, and that the *Day* car did not pass the Schmitz car at any point between Cotton street and Rees street; that *Mr. Day* held out his left hand as he approached Rees street. John McFarland also joined in the affidavit made by L. Marg.

A motion for a new trial is addressed to the sound discretion of the trial court. The action of the trial court thereon will not be disturbed on appeal in the absence of an abuse of such discretion. See sec. 545, under the title of Appeal and Error, Callaghan's Wisconsin Digest. We hold that there was no abuse of discretion in this instance. The newly-discovered evidence, except that of Marjorie Stubbe, would only rebut the testimony of Twohig to the effect that the defendant passed the car in which Twohig was riding, and the Illinois car, just before the accident. This is really a collateral matter. The other testimony in the case satisfactorily establishes the negligence of the defendant. The fact that the car struck the children in itself raises a strong presumption of negligence on the part of defendant. There is also evidence that the car ran to the center of Rees street before it was brought to a stop, although the brakes had been applied fifteen or twenty feet from the place of accident. A. H. Grabinski, a locomotive engineer, testified that "they [the children] were just about, from my judgment, along the west rail of the street-car track when *Mr. Day's* car came

up there like a shot and hit the three children and knocked them about fifteen feet." He testified that the car was going not less than twenty miles per hour. G. J. Brunkhorst, register of deeds of Fond du Lac county, testified: "The car wasn't going so awfully fast. I wouldn't say; I don't think when he hit the children it was going over fifteen or eighteen miles an hour, possibly not at the outside twenty miles."

The facts and circumstances, together with this testimony, indicate quite conclusively that the defendant was driving at an unlawful rate of speed just before the accident, and the question whether the defendant passed the two cars, as testified to by Twohig, just before the accident seems quite immaterial. Although the testimony of Mrs. Stubbe would have been proper enough if produced on the trial, it certainly was not of such importance as to require the granting of a new trial. It cannot be said that the action of the trial court in denying the motion for a new trial was an abuse of discretion.

It is next contended that the damages are excessive. The jury returned a verdict of $12,000 in the case of *Orion West* and $1,500 in the case of *Myron West,* the father. *Orion West* was thirteen years of age. As the result of the accident she received many bruises and contusions of the head, limbs, and body, sustained a fracture of the right collar bone and a compound fracture of the external malleolus of the fibula bone, and a compound dislocation of the fibula bone and a compound dislocation inwardly of the ankle joint, complete, the foot was turned entirely outward, right in the opposite direction, almost 100 degrees from a normal position. The injured ankle joint developed an infection after having been in the cast for two weeks, requiring the removal of the cast and the performance of an operation for the removal of the malleolus, which is the end of the fibula. She was in the hospital three months, during which time she was compelled to lie in bed with her shoulder sagging and her leg

West v. Day, 193 Wis. 187.

in a cast. The foot was in a cast from the 20th day of March until the first week in June, and the tape dressing remained on the shoulder for about five weeks. Several weeks before the trial an operation had to be performed for the removal of the large toe nail which became infected. There is complete ankylosis of the ankle joint. This condition is permanent. There is no motion in the ankle joint. There is slight motion in the foot between the tarsal bones. This is permanent. There is a fifty per cent. permanent disability of the foot. At the time of the accident she had completed about seven years of training in classical dancing, of which she intended to become a teacher. Upon a few occasions she had been compensated for her appearance at dancing entertainments.

The trial court permitted the damages to stand. As has often been said, the amount of damages to be awarded in such cases is peculiarly a question for the jury. While the verdict is large as compared with verdicts upheld by this court ten or fifteen years ago, we cannot say it is excessive in view of the more recent holdings of this court. *Heintz v. Schenck,* 176 Wis. 562, 186 N. W. 610; *Nelson v. Pauli,* 176 Wis. 1, 186 N. W. 217; *Carson v. Green Cab Co.* 186 Wis. 566, 568, 203 N. W. 394.

Concerning the verdict of $1,500 allowed to the father, it is only necessary to say that the proof discloses that he incurred an expenditure of $1,035 for hospital, medical, and surgical expenses. This leaves less than $500 for his damages growing out of the loss of his child's services. Such a verdict should not be disturbed.

*By the Court.*—Judgments affirmed.

A motion for a rehearing was denied, with $25 costs, on June 20, 1927.