SCHREINER, Appellant, vs. BEGHIN, Respondent.*

*January 8—February 5, 1952.*

* Motion for rehearing denied, without costs, on April 8, 1952.

562

For the appellant there were briefs by *DeBardeleben &* *Mahoney* of Park Falls, and oral argument by *Arthur DeBardeleben*.

For the respondent there was a brief by *Smith, Okoneski, Puchner & Tinkham* of Wausau, and oral argument by *Charles F. Smith*.

FRITZ, C. J.  Briefly stated the evidence material to the issues on this appeal is to the following effect:

On September 7, 1949, the plaintiff and Myrtle Ruegger, drove in an automobile to his deer-hunting cabin and got a shotgun and some shotgun shells. He placed the gun on the floor in the car, and put the shells in his pocket and drove into a clover field for the purpose of viewing deer. He had a flashlight uninclosed on the seat of his car and Mrs. Ruegger testified the flashlight was not used at or near the field. The defendant, Kenneth Beghin, a deputy conservation warden, had complaints of deer shining in that field. He testified he came onto plaintiff and knowing his car, followed him and saw him flashing a flashlight out of the left side of his car. Defendant stopped plaintiff with his siren and pulled up to the rear of plaintiff's car and walked to the driver's side of the car and he asked plaintiff whether he had any guns in the car, and he responded in the affirmative. Defendant opened the car door and removed

the gun from the back of the car. Plaintiff told him, "I haven't got any shells." Defendant told plaintiff to give defendant shells which he believed plaintiff had in his pocket. While defendant was standing on the running board of plaintiff's car he tore himself loose from a hold that defendant had on him and started his car ahead. Defendant told plaintiff he was under arrest and would have to come with him to Phillips. Plaintiff refused and his car started going ahead a few feet; and defendant stepped on the running board and took the key from the ignition switch. Plaintiff refused to come with defendant and stated, "I'll clean you up right here." Plaintiff testified defendant searched the glove compartment in the car but did not find anything there, and then grabbed plaintiff's clothing at his chest and pulled him out of the car and pushed him around, still holding him and tearing the buttons from the front of plaintiff's shirt and underwear; that after he and defendant were back in the vicinity of the car defendant told plaintiff he was going to take him to Phillips and that he was going to sleep in jail overnight. After some conversation as to whether plaintiff was going to jail at Phillips, he told defendant that he would go to Phillips, either ahead of him or behind him, but in his own car, whereas defendant testified that plaintiff said he was not going anywhere with the defendant and, "I will clean you right here in the road." Plaintiff testified that he asked defendant for his keys, holding out his hand to receive them, whereupon defendant extended his arm straight out in front of him and said, "Here is your keys" and then shot a tear-gas gun point-blank into the face of the plaintiff.

On the other hand, defendant testified that after the plaintiff told him he was going to clean him right there in the road, plaintiff made the first move in taking a "swing" at defendant; that he backed away from plaintiff and con-

tinued to back away from him, but plaintiff continued to come after the defendant, and as he was backing up defendant finally pulled out the tear-gas gun from his pocket, and held it down by his waist; that as he continued to back up in a half circle Mrs. Ruegger jumped on his back, throwing her arms around his neck and having hold of his chin and face so as to twist his head around while plaintiff was coming at him, and at this time defendant had the tear-gas gun in his hand down by his belt and pointed in a generally upward direction and the gun exploded in his eyes as well as plaintiff's eyes. Defendant denied that he held the gun at arm's length toward the plaintiff's face and fired it in that position; and he claimed the gun was at about the level of the defendant's belt when he fired it. There was testimony that tear gas exploded in defendant's eyes and also plaintiff's and there were red specks of wax, apparently of the type with which tear-gas shells are stoppered, on the faces of the plaintiff and also the defendant, and that tear-gas shells explode after they are out of the gun.

After the explosion plaintiff submitted to the arrest by defendant and was taken to the jail at Phillips and left there by the defendant who departed to procure a warrant for the plaintiff's arrest.

The jury found:

1 (a). That the defendant as conservation warden, at the time he walked up to plaintiff's car and asked plaintiff if he had a gun in the car and plaintiff said he did, had reasonable cause to believe that the plaintiff was guilty of violating the so-called game laws in shining deer at the clover field here in question.

1 (b). That plaintiff did not have in the car at the time a flashlight for the purpose of shining deer.

2. That plaintiff did resist or by his conduct obstruct the warden in making the plaintiff's arrest.

3. That in the manner he used the tear-gas gun, the defendant used unreasonable means to effect the arrest of the plaintiff.

(4. Jury's finding as to the amount of plaintiff's damages.)

5. That the acts of the warden were not all in good faith.

Upon motions after the verdict the court stated:

"On these motions it was strenuously contended on behalf of the defendant that the plaintiff was not entitled to judgment principally because under the statute, sec. 29.05 (9), the defendant as deputy conservation warden is exempt from liability 'for acts done or permitted or property destroyed by authority of law.' . . . I have come to the conclusion that question 3 should have been divided and should have called for a finding from the jury as to whether or not the defendant, as the plaintiff claims, aimed the tear gun directly at the plaintiff, or whether the tear gun was fired by the warden as he claims, not directly at the plaintiff but upward between him and the plaintiff. As the question was put to the jury and as they answered it, it is impossible to say whether or not they found the tear-gas gun was fired in the manner claimed by the plaintiff or in the manner claimed by the defendant, and a definite finding as to that is imperative in view of the exemption statute [sec. 29.05 (9)] just referred to.

"The instructions were defective also in regard to the burden of proof on this question. It was overlooked by the court . . . that the burden of proof is not placed upon the plaintiff or the defendant either on this question. The burden of proof applicable to it is clear and satisfactory evidence. . . . That alone would not be fatal to the verdict but it seems to me the failure to have the jury make definite findings upon the manner in which the tear gun was fired is essential."

Therefore the court ordered, that plaintiff's motion for judgment on the special verdict be denied; and that the defendant's motions after verdict be denied except the motion for a new trial which was granted on the grounds stated by the court.

Upon the evidence as to matters stated above it was in the province of the jury to find, as it did, that defendant had reasonable cause for arresting the plaintiff and that he did

resist or by his conduct obstruct the defendant in arresting plaintiff. The sole basis for a judgment for plaintiff's recovery of damages was the finding in answer to the third question of the verdict, that by the manner in which defendant used the tear-gas gun he used unreasonable means to effect the arrest of the plaintiff. In relation to that finding the trial court rightly concluded that "as the question was put to the jury and as they answered it, it is impossible to say whether or not they found the tear-gas gun was fired in the manner claimed by the plaintiff or in the manner claimed by the defendant; and a definite finding as to that is imperative in view of the exemption statute [sec. 29.05 (9)] just referred to." Furthermore, as the court said in relation to the jury's answer to question 3, "The instructions were defective also in regard to the burden of proof on this question. It was overlooked by the court . . . that the burden of proof is not placed upon the plaintiff or the defendant either on this question." In view of said errors, because of which the court rightly concluded that its instructions were erroneous and insufficient in the respects stated by the court, the order granting a new trial should be affirmed, in the absence of any abuse of discretion. As stated in *West v. Day*, 193 Wis. 187, 193, 212 N. W. 648: "A motion for a new trial is addressed to the sound discretion of the trial court. The action of the trial court thereon will not be disturbed on appeal in the absence of an abuse of such discretion." *State v. Bidwell*, 201 Wis. 210, 212, 229 N. W. 633. On defendant's motion to review he contends that under the verdict he was entitled to a dismissal of the action as a matter of law because of his right to arrest the plaintiff when he saw him shining deer; and the jury's finding that plaintiff resisted or by his conduct obstructed the defendant in making the arrest. Because of the defects and improper form of the verdict and the instruc-

tions to the jury the action of the trial court in ordering a new trial was within the sound discretion of the trial judge and in the absence of any abuse of such discretion the order granting a new trial must be affirmed. *McCarthy v. Thompson,* 256 Wis. 113, 115, 40 N. W. (2d) 560; *State v. Bidwell, supra; West v. Day, supra.*

*By the Court.*—Order affirmed.