CARSON, Respondent, vs. GREEN CAB COMPANY, Appellant,
and LEET, Respondent.

*March 11—April 7, 1925.*

*Carriers: Taxicabs: Degree of care required toward passenger:
Rights of way at street intersections: Duty to avoid collision:
Speed in incorporated cities: Evidence: Materiality: Argu-
ment of counsel: Unintelligible comment: Harmless error:
Excessive damages.*

1. An automobile driver having the right of way over one ap-
proaching from his left has the right to presume that the
other driver will obey the statute as he approaches a street
intersection; but if it is apparent that he is not obeying the
statute and that a collision is likely, the driver having the
right of way cannot rely on the presumption, but must use
ordinary care to avoid danger.  p. 569.

2. In an action by a taxicab passenger for injuries sustained in a
collision with another automobile, in view of the high degree
of care imposed on common carriers, and notwithstanding the
fact that the taxicab driver had the right of way, the evidence
is *held* to make it a question for the jury whether the cab
driver could have avoided the collision, and to sustain a judg-
ment for the plaintiff.  p. 570.

3. Under sub. 1, sec. 1636—49, Stats. 1921, providing that the
speed of a motor vehicle within the corporate limits of any
city or village or through unincorporated villages shall not
exceed fifteen miles per hour, except where the houses are
more than two hundred feet apart, where a speed of twenty
miles is permitted, the exception is applicable only to unincor-
porated villages and not to incorporated cities.  p. 571.

4. Where testimony of the cab driver, on cross-examination, that
his compensation was on a commission basis was admitted,
testimony that the driver would lose a bonus in case of acci-
dent should have been admitted as tending to show a motive
for using care; but the evidence was only remotely material,
and in view of an abundance of other testimony showing what
the cab driver actually did and refrained from doing, its ex-
clusion was not prejudicial error.  p. 571.

5. A remark of plaintiff's counsel during argument to the jury,
the meaning of which was unintelligible and probably beyond
the comprehension of the jury, is *held* not to have seriously
misled them.  p. 572.

6. Criticism by counsel of defendant's witness, when used with reference to his conduct in gathering the names of witnesses to the accident while plaintiff was lying unconscious on the ground, not being entirely unwarranted, is *held* not prejudicial.   p. 573.
7. An award of $10,000, approved by the trial court, for a compound fracture of the pelvic bone and a broken jaw, the latter affecting the nerves and causing almost continuous pain since the date of the accident, and resulting in hyperesthesia over plaintiff's entire body, is *held* not excessive.   p. 573.

APPEAL from a judgment of the circuit court for Milwaukee county: E. T. FAIRCHILD, Circuit Judge. *Affirmed.*

This is an action brought to recover damages for personal injuries received by the plaintiff, a married woman thirty-eight years of age, while riding in one of the automobiles of the defendant *Green Cab Company* on January 1, 1923.   The injuries were suffered when an automobile, driven by the codefendant *Leet,* collided with the cab in which the plaintiff was being carried, at the intersection of Kenwood boulevard and Downer avenue in the city of Milwaukee.

The driver of the cab testified that he was going at the rate of about eighteen miles an hour, but that he slowed down to thirteen miles an hour as he approached the intersection in question; that when about forty feet from the intersection he looked to the north and saw the car driven by *Leet* coming down Downer avenue about 250 feet from the intersection; that as he entered the intersection he again looked to the north and saw the car ninety feet away, and as he had the right of way proceeded to cross Downer avenue; that after he was well into the intersection he realized the imminence of a collision, and, not having space enough in which to stop and avoid it, he increased the speed of the cab in an effort to cross before the other car struck him; that he was almost across the street when the car driven by *Leet,* at an excessive rate of speed in a southerly direction on Downer avenue, struck the cab on the left side just over

the rear wheel, causing the injuries of which the plaintiff complains.

*Mr. Leet* and Mr. Gutenkunst, who was riding in the cab with the plaintiff, testified that the cab was going from twenty to twenty-five miles an hour when it entered the intersection, and a Mr. Kronberg, who witnessed the collision, said that the cab was going at the rate of from thirteen to fifteen miles an hour. The driver of the cab varied somewhat from time to time as to just where it was that he slowed down to thirteen miles an hour, and his statement that he did not consider putting on the brakes until he perceived the threatening collision was disputed by the witness Kronberg, who stated that the cab driver put on the brakes just before entering the intersection and testified as to the existence of skidding marks on the pavement of Kenwood boulevard before and in the intersection.

The jury in their verdict found that both of the defendants were guilty of negligence proximately contributing to the injuries of the plaintiff and assessed the damages at $10,000. Other facts will be stated in the opinion.

For the appellant there were briefs by *Lines, Spooner & Quarles* of Milwaukee and *E. C. Markel* of Philadelphia, and oral argument by *Charles Quarles.*

For the respondent *Leet* there were briefs by *Olwell & Brady* of Milwaukee, and oral argument by *Bernard V. Brady.*

For the respondent *Carson* there was a brief by *Schmitz, Wild & Gross* of Milwaukee, and oral argument by *Robert Wild* and *Adolph Schmitz.*

JONES, J. It is argued by counsel for the *Cab Company* that the proximate cause of the plaintiff's injuries was the negligence of the defendant *Leet;* that the *Cab Company's* driver had the right of way, was not bound to anticipate the danger, and that there was no credible evidence of the appellant's negligence. In addition to the facts already stated

there was evidence that at some distance before the intersection one of the passengers in the cab had cautioned the driver to go more slowly. The·driver of ·the cab had a full view of the *Leet* car for a long distance and knew that the car was coming at an excessive rate of speed. On cross-examination he swore .that it was traveling four times as fast as his own car. There were several inconsistencies and conflicts in his testimony as to the time when he began to slow down his car and the mode of operating it. From the evidence as to the skidding marks in connection with other testimony that he tried in vain to stop the cab,.the jury could infer that he was going at a higher rate of speed than he asserted. The fact that the driver had the right of way was undoubtedly an important fact relevant to the question of his negligence. He had the right to presume that the operator of the other car, coming from the north, would observe the statute as he approached the intersection. But if, using the necessary care, he saw or could have seen that *Leet* was not obeying the statute and was thereby liable to cause a collision, the driver of the cab could no longer rely on the presumption, but it was his duty to use such care to avoid danger as the existing circumstances required. If in such a situation one chooses to stand on his assumed legal right and courts obvious danger he must take the consequences. As said in an opinion by Mr. Chief Justice WINSLOW:

"The possession of this right does not of course justify the possessor in plunging ahead regardless of consequences nor in failure to exercise ordinary care to avoid injury to others, but the fact is an important one to be considered in deciding the question of negligence." *Glatz v. Kroeger Bros. Co.* 168 Wis. 635, 170 N. W. 934.

There is an especial reason for applying this rule in the case before us. The defendant was a common carrier and the plaintiff was a passenger. "The duty imposed upon a common carrier to provide for the safety of passengers is to exercise the highest degree of care reasonably to be ex-

pected from human vigilance and foresight, in view of the character of the conveyance adopted and consistent with the practical operation of the business." *Dibbert v. Metropolitan Inv. Co.* 158 Wis. 69, 147 N. W. 3. If the driver of the cab by the exercise of the required degree of care should have discovered that there was danger of a collision at a time when he could stop his car and avoid it, that was his duty although he had the right of way. On the evidence this was a jury question. There is much argument in the briefs as to the negligence of *Leet.* We shall not discuss this subject, as the verdict finding his neglect is fully sustained and is not appealed from. The evidence tends to show that he was far more negligent than the driver of the cab, but this does not exonerate the defendant *Cab Company* from liability if its negligence proximately causing the injury is established. On this issue we see no reason for disturbing the verdict of the jury approved by the trial court.

It was stipulated at the trial that the block from Downer avenue west was 300 feet long and that there was but one building on the south of that block. There was also but one building on the north side, which was the normal school. The statutes, sub. 1, sec. 1636—49, in force at the time of the collision, among other things provide that:

"No person shall operate or drive any automobile . . . at a rate of speed greater than is reasonable and proper, having regard to the width, traffic and use of the highways and the general and usual rules of the road, or so as to endanger the property, life or limb of any person, and no person shall operate or drive any automobile, motorcycle or other similar motor vehicle, along any public highway, within the corporate limits of any city or village, *or through any unincorporated settlement containing more than ten houses or places of business,* at a speed exceeding fifteen miles per hour, *except where the houses or business places, or both, shall average more than two hundred feet apart, where a safe speed not exceeding twenty miles an hour may be used.*"

On the stipulation and the statute counsel for the defendant *Cab Company* requested an instruction to the effect that the speed limit was twenty miles an hour. Prior to 1921 the statute did not include the clause relating to unincorporated villages or the clause relating to houses and business places averaging more than 200 feet apart. The portion of the statute above quoted, including the italicised words, indicates the form of the amendment on this subject as found in the original statutes, ch. 537, Laws of 1921, amending sec. 1636—49 of the former statute. The amendment might have been so framed as to express more clearly the legislature's intent, but we are of the opinion that it was not the intention to change the law as to the rate of speed in incorporated cities, but that it was the intent to prescribe a limit of speed of fifteen miles per hour in unincorporated settlements containing more than ten houses or places of business, except where the houses or places of business or both averaged more than 200 feet apart. This seems the natural and reasonable interpretation of the amendment. The clause permitting a speed of twenty miles an hour is closely connected with that relating to unincorporated settlements and is appropriate for such a situation, but it would lead to great confusion and uncertainty if applied to incorporated cities. In our opinion the proposed instruction was properly denied.

On the cross-examination of the cab driver he was asked if his compensation was on a commission basis and he answered that it was. Doubtless this testimony was drawn out for the purpose of leaving an inference that he had a motive for driving rapidly and thus earning as much as possible. To rebut this testimony counsel for the defendant *Cab Company* offered testimony to prove that the driver would lose a bonus in case of an accident. Both kinds of testimony had only a remote bearing on the real issue and yet it cannot be said that either was wholly irrelevant. The testimony admitted tended to show a motive for fast driving; that re-

jected to show a motive for using care. It is the general rule that, when there is a question whether an act was done by any person, a fact which supplies a motive for such an act is relevant; and since the testimony offered in behalf of the plaintiff was admitted, the other testimony offered by the defendant should have been received. But it does not follow that the error should cause a new trial. There may be situations in which the rejection of evidence tending to show motive may be grievous error. But in this case there was a mass of direct testimony showing what the cab driver actually did and refrained from doing in respect to the negligence alleged. There was so much of this evidence that his mental operations had but little materiality in the real issue. We do not consider that the error was prejudicial.

Counsel for the defendant excepted to the following remark made by one of the attorneys for the plaintiff during the argument to the jury:

"There should not be any dispute between both of the defendants with respect to the amount of recovery by this plaintiff, if plaintiff makes a recovery in this case against both defendants in this case, both defendants are equally liable, to both defendants."

In their brief counsel for the plaintiff argue that this language was "nonsense." With this we are inclined to agree. At least its meaning is unintelligible to us, and we are not disposed to hold that the jury were better able than we are to understand it. Since the meaning of the remark was probably beyond the comprehension of the jury we do not think they were seriously misled by it.

Another exception was to the following language used in the argument:

"The inference I want to draw from the witness is this: that a person who will so conduct himself as the evidence shows, will be as calm and unperturbed as Burton was on the witness stand before you, not a twitch of a muscle, perfectly self-possessed, without the intervention of anything

to disturb his calmness, characterizes the man. . . . That calmness, that freedom from any sense of blame, is shocking, in view of the injury and the suffering and the broken body, and invites, if it does not compel, comment upon the lack of credibility."

This language was used with reference to the conduct of the witness on the stand and in gathering the names of witnesses to the accident while the plaintiff was lying unconscious on the ground. There was no vagueness in this language or uncertainty as to its meaning and it was a severe criticism of the conduct of the witness. But we cannot say that it was entirely unwarranted. The trial judge held that the remarks were not prejudicial, and we do not reverse his decision.

Although the defendant *Leet* did not appeal, he asks for a review on the question of damages, and counsel for both defendants argue that they were excessive. As a result of the accident the plaintiff was thrown from the cab to the pavement and suffered a compound fracture of the pelvic bone and a broken jaw, with minor cuts and bruises about the head and body. After six weeks the plaintiff was taken from the hospital to her home, though it was some time before she was able to walk. The fractures of the pelvic bone healed satisfactorily, but the broken jaw and cheek bone affected the nerves of the face so that she has suffered from pain almost continually since the accident. Three doctors testified that ordinarily such a condition was not permanent, but that in view of the fact that this condition had lasted two years it was probable that it was permanent. At the time of the trial there was a depression over the right side of the face in the neighborhood of the right cheek bone. The plaintiff had what was called hyperesthesia over the entire body, meaning a sort of increased sensation. According to expert testimony she was suffering from neurasthenia. She was unable to attend to her domestic duties and had become irritable to the members of her family. It was conceded that

the physicians called on her behalf were of high standing and no testimony was given for the defendants' on the subject of damages. They are undoubtedly high, but the jury and the trial court evidently believed that the injuries are permanent. We are persuaded that the judgment should not be reversed on this ground.

*By the Court.*—Judgment affirmed.