**DISTRICT OF COLUMBIA v. DISNEY.**
No. 6479.

United States Court of Appeals for the District of Columbia.

Argued Nov. 11, 1935.

Decided Dec. 16, 1935.

Elwood Seal, Asst. Corp. Counsel, of Washington, D. C., for appellant.

Henry I. Quinn and Albert D. Esher, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

ROBB, Associate Justice.

Appeal from a judgment for the plaintiff (appellee here) in the Supreme Court of the District in the sum of $4,250 for personal injuries in an action against defendant municipal corporation (appellant).

In his declaration plaintiff alleges that on the 19th day of February, 1931, there was in the District "a common and public unpaved or dirt walkway or sidewalk on the east side of Georgia Avenue near Blair Road Northwest"; that it was the duty of the District (defendant) to keep and maintain this sidewalk in a reasonably safe condition for public use; that the defendant failed in that duty, "in that, about two weeks before the date hereinbefore mentioned, the defendant was notified that the underground water pipe connected with or near a horse-watering trough * * * on the east side of Georgia Avenue Northwest, adjacent to such unpaved or dirt walkway or sidewalk and about one hundred and thirty feet south of the southeast corner of Blair Road and Georgia Avenue, was leaking, and the surface of the ground was weakened thereby, but no action was taken by defendant to remedy this condition"; that on February 19, 1931, plaintiff was walking along such unpaved or dirt walkway or sidewalk, in the exercise of due care, "when, without any warning, the surface

of such unpaved or dirt walkway or sidewalk, at a point near such horse-watering trough, caved in, and plaintiff was precipitated and forcibly thrown down into the hole caused by said cave-in, which was about two feet in depth; that as a result thereof the plaintiff suffered severe injury, to wit, lacerated, contused, abrased right leg, from inner maleolius to inner condyle; infected area at junction of lower one-third with upper two-thirds of tibia, anterior, and inner surface; traumatised nerves, entire thigh and right leg; contused testicles; and plaintiff suffered and sustained sever shock to his nerves and nervous system, sleeplessness, pain and suffering during locomotion, and great mental and physical pains and sufferings; and plaintiff has been put to great expense in procuring medicines and medical and surgical supplies and services in endeavoring to be cured of said injuries"; that as a result of such injuries plaintiff was confined to his bed for a long space of time and was prevented from attending to his business or occupation; and had suffered and would continue to suffer shock "to his nerves and nervous system"; and suffered "severe injuries, to wit, * * * contused testicles."

The evidence for the plaintiff tended to prove that on the day of the injury plaintiff was walking from his garage south on Georgia avenue, and just as he got to the north end of the watering trough, about two feet from the east side of the trough, "he suddenly caved through the sidewalk, his right leg going down to above the knee; that the left leg extended back; * * * that the hole into which he fell was full of mud and water; that his right foot turned and twisted under a pipe; that the foot had to be pulled away from underneath the pipe and plaintiff had to be lifted out of the hole." The sidewalk was made of cinders and was used by the public generally; and, besides the injuries to his leg, "his body rammed his testicles against the ground; that the testicles started to swell; * * * that all that evening and the next day and for nearly two weeks the swelling of the testicles continued; that after that time the swelling commenced to go down; that the left testicle dwindled until now the left one had disappeared; that the right testicle is one-half of the size it was at the time of the accident; * * * that his testicles pained him; that after the swelling went down his right side was numb, had no

feeling." At the time of his injury his weight was 186 pounds, and at the time he testified it was only 156 pounds. This evidence was received without objection.

Thereupon, the court, over the objection and exception of the defendant, permitted the plaintiff to testify that as a result of the injury to his testicles he had become impotent. The testimony regarding the extent and effect of his injuries was supported by medical testimony.

■ The first assignment of error challenges the action of the court in permitting plaintiff to testify as to his impotency, the defendant's contention being based upon the theory that there was no allegation to that effect in the declaration. There is no merit in this contention. Plaintiff alleges in his declaration that the accident caused his testicles to be contused, which injury the evidence tends to show resulted in impotency. In other words, the declaration was notice to defendant of an injury which might result in impotency.

In Hall v. Manufacturer's Coal & Coke Co., 260 Mo. 351, 168 S.W. 927, 933, Ann. Cas. 1916C, 375, cited by defendant, there was a general allegation in plaintiff's declaration to the effect that his body was severely and permanently wounded, bruised, contused, and torn, and "that he suffered great bodily and mental pain and anguish as the result of said injuries * * * and is and was, as a result of said injuries, permanently injured and crippled for life, that ever since said injuries and as a result thereof and by reason of said injuries he has suffered, does suffer, and will continue to suffer for the remainder of his life, great bodily pain, annoyance, inconvenience, and expense." Plaintiff in that case had been permitted to introduce evidence of impotency. The appellate court said: "It will be noticed that the petition [declaration] fails to specifically allege impotency, neither does it contain an allegation of a general nature which might be said to embrace within its terms the condition of impotency."

In the present case the allegation as to the injury to the testicles "might be said to embrace within its terms the condition of impotency." That allegation was sufficient notice to defendant on this branch of the case as to what it would be called upon to answer, so that it would "not be taken by surprise." Garrett v. Louisville & Nashville R. Co., 235 U.S. 308, 35 S.Ct. 32, 33, 59 L.Ed. 242.

■ In the second assignment of error defendant complains because the court admitted testimony "as to the atrophy of plaintiff's testicles." As already stated, this evidence was received without objection or exception. Defendant may not now object to the introduction of this testimony. Moreover, our reasons for rejecting the first assignment of error are applicable also to this.

■ In the third assignment of error defendant complains that the court failed to strike the testimony of the witness Elmer Millard relating to the sinking of his truck some 15 to 18 feet away from the hole in which plaintiff is alleged to have fallen. The witness testified that during February, 1931, a week or 10 days before plaintiff's accident, he drove a ton and a half Ford truck across the sidewalk 15 feet south of the watering trough; that both hind wheels suddenly went in up to the hub; that before he drove across, the driveway was perfectly smooth; that he saw the hole in which plaintiff fell; at the bottom of the hole was mud and water. The witness overheard the statement of a Mr. Fitzgerald (since deceased) in a conversation with police officers between the time the truck broke through and the time plaintiff fell, to the effect "that if they did not fix that place in the driveway someone was going to break their neck." The defendant moved to strike out this testimony, which had been given without objection or exception. The court declined to strike at that stage of the proceeding.

Later Police Officer Storm testified that on December 28, 1930, he saw a deep hole in a tree-box space 25 or 30 feet south of the watering trough and reported the hole on the same day.

A Mr. Leizear, after testifying concerning the accident to plaintiff, testified that he heard Fitzgerald in conversation with police officers say that "the whole place was undermined" and that unless something was done "somebody is going to break his neck." When Leizear overheard Fitzgerald state to the officers that this whole place was undermined, Fitzgerald was standing where the Millard truck had broken through. The evidence therefore as to the breaking through of the truck was properly admitted.

Mr. Elbert, a District computing engineer, testified to the laying on August 1, 1930, of a 12-inch water main under the sidewalk about 2 or 3 feet east of the watering trough, the location of which has already been stated. It is now contended in the fourth assignment of error that the court erred in admitting his testimony. No objection or exception was taken to its admission. There is, therefore, no basis for this assignment of error. Moreover, the defendant later introduced testimony concerning the laying of the water main.

■ In the fifth assignment of error defendant complains because the court admitted testimony relative to the hole in the tree-box space in December 1930, some 25 or 30 feet away from the place which caved in under plaintiff. This hole was reported by the police officer on December 28, 1930. This testimony was admissible, we think, as tending to show that before plaintiff's injury there was a condition within a space of 25 or 30 feet of the point of the accident which should have indicated to defendant that the entire place, as described in Fitzgerald's complaint, "was undermined."

■ In assignment 6 defendant alleges that the court should have directed a verdict for the defendant at the close of plaintiff's case; and in 7, that a verdict should have been directed at the conclusion of all the testimony. By introducing evidence, after denial at the close of plaintiff's case of the motion for a directed verdict, defendant waived the exception. Picard v. Smith, 59 App.D.C. 291, 40 F. (2d) 803. The evidence as a whole justified the conclusion that the defendant had notice of an unsafe condition in the sidewalk at and in the vicinity of the accident, and that an examination would have disclosed the cause and suggested the remedy.

■ In his charge to the jury the court directed attention to the fact that several months after the accident "the place was dug up and a leak discovered in the pipe connecting with the water trough"; that ordinarily the existence of a defect several months after an accident is no notice of its existence at the time, but, said the court, "it seems to me that in this case that may be taken into consideration in connection with all those other circumstances and from that you might, if you thought proper, draw some inference as to its previous existence."

In the ninth, eleventh, and twelfth assignments of error the correctness of this portion of the charge is challenged.

Mr. Keppel, an employee of and witness for the defendant, testified that in the latter part of 1930 and early in 1931 he was a plumber's helper and at the time of his testimony (January 1935) a plumbing inspector; that he was in the vicinity of Georgia avenue and Blair road once a week; that he had never seen the horse-watering trough overflow nor had he seen the trough leak, except once when he was sent there in response to a complaint. "On June 28, 1931, at 7:30 in the morning he went there to make a repair; that he repaired the leak; that the leak was in the intake on the south end; that the repair he made was to a small 3-inch galvanized nipple; that in February 1931 witness was at the horse-watering trough; that he looked up the record; that there was nothing wrong with the trough in February 1931; * * * that he was working the week ending February 19, 1931." "That 4 months after the accident, witness got orders to make a test; that he put a curb cock key into the water box and turned the water off; that when he turned the water off it was not leaking, but when he turned it on there was a slight leak in the curb box."

On cross-examination this witness testified that the curb cock was about 3 feet underground; "that the leak was not at the curb cock but right at the fountain, in a small ¾-inch nipple at the inside; that he did not know how long it had been leaking"; that he did not dig up or investigate the cause of the cave-in in February, 1931; that the first time anything was done to the trough was in June, 1931; "that if a leak occurred the ground around it would be soft and the water would come up in the course of 2 or 3 days and the ground around the trough would be soft and soggy; that the moisture would come up and cause a cave-in and a cave-in could be caused by a leak." On redirect examination this witness testified that the leak in June, 1931, was caused by the short, 3-inch nipple; "that the threads were rotten on the end."

It will be observed that Keppel's test was made by direction of the defendant. The purpose of that test undoubtedly was to disprove plaintiff's contention that a leaky pipe in the previous February had been responsible for the dangerous condition which resulted in plaintiff's injuries. But a leak was discovered by defendant's employee and was disclosed by his testimony. How long the leak had existed, witness could not say, but he did say that it was "caused by the short, 3-inch nipple," and that "the threads were rotten on the end." No other leak was discovered, and in the circumstances the justifiable inference is that with the repair of the discovered leak the dangerous condition terminated. The leak, according to Keppel's testimony, was caused by "rotten threads." It is common knowledge that a considerable length of time must elapse before metal threads will become rotten. Indeed, this was recognized by the witness when he said "he did not know how long it (the nipple) had been leaking." Defendant having introduced that testimony, the court properly commented upon the weight to be given to it and the inferences reasonably deducible therefrom in the light of the other evidence. The charge was correct.

The judgment must be affirmed.

Affirmed.