## CAPITAL TRANSIT CO. v SMALLWOOD.
### No. 9388.

United States Court of Appeals. District of Columbia.

Argued March 4, 1947.
Decided June 2, 1947.

EDGERTON, Associate Justice, dissenting.

Mr. R. Sidney Johnson, of Washington, D. C., with whom Messrs. H. W. Kelly and R. E. Lee Goff, both of Washington, D. C., were on the brief, for appellant.

Mr. Albert Brick, of Washington, D. C., for appellee.

Before STEPHENS, EDGERTON, and WILBUR K. MILLER, Associate Justices.

WILBUR K. MILLER, Associate Justice.

The Capital Transit Company appeals from a judgment against it awarded by the District Court of the United States for the District of Columbia, pursuant to the verdict of a jury, to Donald J. Smallwood because of an injury sustained when his

automobile was struck by a streetcar in the intersection of 8th and B Streets in southeast Washington.

The accident happened on the morning of December 30, 1944. Smallwood was driving east on B Street, which runs east and west. He was approaching the intersection with 8th Street, which is 40 feet wide, runs north and south, and is occupied by double car tracks. Both streets were covered with a thick coating of ice and were quite slippery. There was no traffic except a northbound streetcar approaching the intersection. The car and the automobile collided in the intersection, 25 feet east of the west curbline of 8th Street and 10 feet north of the south curbline of B Street.

According to Smallwood, he saw the streetcar when it was 60 feet—slightly more than a carlength—away from the intersection, and observed that it was going 25 miles an hour. He first testified that he was, at that moment, entering the intersection at a speed of 8 miles an hour; but he later said that his car was then 35 feet west of the intersection, moving at a rate of from 10 to 12 miles an hour. He continued his course without stopping and without applying the brakes. At one point in his testimony he said that, after seeing it once, he paid no more attention to the streetcar, but looked straight ahead and did not see it again until he was struck. Again he testified that when he was at the west rail of the southbound track, the streetcar was just about to enter the inter-

section, "practically on me," thus placing both streetcar and automobile 10 or 12 feet away from the point of collision. Whether he meant by that testimony that he actually saw the streetcar then, or whether he was reasoning as to what its position must then have been, is immaterial; for he unequivocally said that he saw the car 60 feet away (70 feet from the point of impact) when he himself was 22½ feet from that point. He estimated the streetcar's speed as approximately three times as great as his own. At any time he could have stopped in 3 or 4 feet, he said.[1]

Under any one of his several versions of his conduct, Smallwood was guilty of negligence as a matter of law.[2] He attempts to escape the consequences of his negligent failure to make the quick stop of which he was capable by asserting that under a traffic regulation, introduced in evidence, he had the right of way because he was first in the intersection, and that the motorman was, therefore, negligent in not yielding to him. There was evidence that he entered the intersection ahead of the streetcar, but only by a second or two; for, at 25 miles an hour, the speed he attributed to it, the car would have been in the intersection less than two seconds after he first saw it.

Perhaps, therefore, Smallwood had ( e technical right of way under the traffic regulation. But that regulation is not to be construed as an invitation to recklessness. Possession of the technical right to precedence does not justify negligent insistence upon it; and when it is possessed

---

[1] Because of the brushing of snow from the tracks, each rail was in an icy rut 2 inches deep, a condition which made the crossing rough for automobiles. Smallwood knew this and said he approached very carefully for fear of breaking a spring. The ruts on the southbound track would have aided the sudden stop he said he could have made, for as the appellee graphically said, "Of course, them ruts, you get down in them and that is where you stay; you stand still."

[2] In Washington Railway & Electric Co. v. Chapman, 62 App.D.C. 140, 65 F. 2d 486, 487, which involved facts almost identical with those in the present case, this court commented as follows on the act of the truck driver and his companion:

"That they were guilty of contributory negligence in driving upon the track, under these conditions, is in our opinion beyond question."

In Kelly Furniture Co. v. Washington Ry. & Elec. Co., 64 App.D.C. 215, 76 F. 2d 985, 987, we said of a motorcyclist in a quite similar situation:

"If he saw the approaching car so close at hand as to make the passing dangerous, he took the risk of injury in passing it ahead. If he saw it imperfectly and then, without again looking, continued heedlessly on, he likewise took the risk. In either case he was guilty of negligence, for, by his own statement, he could have stopped in a distance of three to five feet."

by a margin of only a second or two over a streetcar, a motorist relies on his technical right of way at his peril. No man has the right to calculate such close chances as to his ability to cross the track ahead of an approaching streetcar, and thus throw the risk of injury on the transit company.[3]

Moreover, it must be remembered that even at an intersection a streetcar has what we have described as the preferential, though not exclusive, right of way. Under that rule, which is thoroughly established in this jurisdiction,[4] a motorist on or near the track must use reasonable care, as a streetcar approaches, to get off or keep off the track until it passes. We have held that the driver of an automobile is charged with knowledge of a streetcar's preferential right of way.[5] Even if, as a general proposition, a streetcar's preferential right of way at an intersection must yield to the right of way conferred by the traffic regulation on an automobile which preceded it into the intersection—which we do not now decide—the contrary is true where, as here, the motorist has precedence under the traffic regulation by less than two seconds. In such circumstances, he is negligent if he proceeds into the path of a streetcar so close at hand, when he is able, as Smallwood was, to stop within 3 or 4 feet and save himself from injury.

The appellant assigns as error the refusal of the court to direct a verdict in its favor at the close of the appellee's (plaintiff's) evidence, and the similar refusal at the close of all the evidence.

We need not consider whether the District Court erred in refusing to give binding instructions for the appellant when the appellee rested, for the transit company waived the point by proceeding with its own proof.[6] At the close of all the evidence, the District Court, after denying the appellant's motion for a directed verdict at that point, submitted the case to the jury under a last clear chance instruction. This was error. The appellee's testimony showed, as we have seen, that he was guilty of contributory negligence as a matter of law. He relies on the last clear chance doctrine to rescue him from the consequences of that negligence. But that doctrine does not apply unless the negligent plaintiff either is oblivious to his peril or is unable to extricate himself from his dangerous position.

Smallwood saw the streetcar when it was only 60 feet away and was approaching at what seemed to him to be a rapid rate; so he knew then of the impending peril. He said he could have stopped in from 3 to 4 feet. It follows that no reasonable juror could have believed that he was oblivious to the danger, nor that he could not have extricated himself. In the circumstances of this case, therefore, the doctrine of last clear chance did not apply.[7] The jury

[3] Bell Cab Co. v. Coppridge, 81 U.S. App.D.C. 337, 158 F.2d 540, 541, in which we said the following in note 2:

"Carson v. Green Cab Co., 186 Wis. 566, 203 N.W. 394; Bland v. Hershey, 60 App.D.C. 226, 50 F.2d 991, 992, in which we quoted approvingly the following from Fitts v. Marquis, 127 Me. 75, 140 A. 909:

"'No driver, and especially no driver of an automobile, has leave to approach an intersection without using reasonable watchfulness and caution to have his vehicle under control. When approaching a highway crossing, as elsewhere on the public ways, eternal vigilance is essential to the practical matter of driving automobiles.'

"This is true regardless of whether the intersection is controlled by stop lights or stop signs and regardless of whether a traffic regulation technically gives to one approaching car the right of way over another."

See also McCarthy v. Consolidated Railway Co., 79 Conn. 73, 63 A. 725.

[4] Gardner v. Capital Transit Co., 80 U.S.App.D.C. 297, 152 F.2d 288; Jackson v. Capital Transit Co., 69 App.D.C. 147, 99 F.2d 380; Kelly Furniture Co. v. Washington Ry. & Elec. Co., 64 App.D. C. 215, 76 F.2d 985; Washington Railway & Elec. Co. v. Upperman, 47 App. D.C. 219.

[5] Washington Railway & Elec. Co. v. Chapman, 62 App.D.C. 140, 65 F.2d 486.

[6] District of Columbia v. Disney, 65 App.D.C. 138, 81 F.2d 272; Chevy Chase Dairy v. Mullineaux, 63 App.D.C. 259, 71 F.2d 982; Moses v. Lockwood, 54 App. D.C. 115, 295 F. 936, 33 A.L.R. 1467; Murray v. United States, 53 App.D.C. 119, 288 F. 1008.

[7] In the almost identical Kelly Furniture case, supra, we said binding instructions for the defendant were properly given.

should have been instructed to find for the appellant.

Reversed.

EDGERTON, Associate Justice (dissenting).

I think the judgment should be affirmed. According to my understanding, Smallwood stuck to his story that he never saw the streetcar after he crossed the curb line and entered the intersection. The phrase "practically on me," which he used on cross-examination, was used in this context:

"Q. Now, when * * * you were about to enter on this first car track, where was the streetcar then? A. The street car was pretty nearly in the intersection normally, then.

"Q. On you? A. Practically on me." He did not say, and I think he did not mean to imply, that he saw the streetcar at this time. I understand him to have meant only that it probably was, or that it must have been, in the described position at this time. I cannot interpret the word "normally," in this context, in any other way. So interpreted, it is consistent with the rest of his testimony.

If, as the jury might find, Smallwood did not see the streetcar after he entered the intersection, I think the jury might fairing infer that he was oblivious to danger. For if he did not see the car, he did not look for it; and if he did not look for it, it is reasonable to suppose that he did not think it endangered him. The theory of the prevailing opinion appears to be that if a man sees a streetcar approaching an intersection, continues on his way without looking at the car again, and is run over, he must be conscious of impending peril in the meantime. The opposite inference seems to me the more reasonable. The court's theory overlooks. (1) the fact that the man may err, either negligently or otherwise, in estimating his own speed, the car's speed, his own distance or the car's distance from the point where their paths will meet, or the probable conduct of the streetcar operator, with the result that the man thinks he is safe; and (2) the fact that he may negligently fail to give any consideration to these matters. There are, in short, three possibilities in regard to Smallwood's state of mind. He may have believed he was in danger; he may have believed he was safe; or his mind may have been blank as to danger and safety. In view of his conduct, the first possibility, which the court treats as the only one, seems to me the least likely of the three. I think the other two made it necessary for the trial court to give the instruction which it gave on the last clear chance doctrine. Whether Smallwood was conscious of danger or oblivious to it was, I think, a question for the jury.