Mrs. Olive DINDO, Plaintiff-Appellee,

v.

GRAND UNION COMPANY, Defendant-Appellant.

No. 248, Docket 27714.

United States Court of Appeals Second Circuit.

Argued Jan. 9, 1964.

Decided March 16, 1964.

Cornelius O. Granai, Barre, Vt., for plaintiff-appellee.

Kyle T. Brown, St. Johnsbury, Vt. (Witters, Akley & Brown, St. Johnsbury, Vt., on the brief), for defendant-appellant.

Before LUMBARD, Chief Judge, and KAUFMAN and MARSHALL, Circuit Judges.

MARSHALL, Circuit Judge:

While shopping in the Grand Union supermarket in Barre, Vermont on December 10, 1959, plaintiff Dindo was struck on her left shoulder by a 28-ounce can of pork and beans which fell from the top shelf of a display counter. She sued the Grand Union Company for her resulting injuries, and recovered a $12,500 verdict, which Grand Union now seeks to overturn, asserting insufficiency of evidence to sustain the verdict, excessiveness of the verdict and prejudicial errors in the conduct of the trial.

The evidence on how the accident happened was quite uncomplicated. Mrs. Dindo and a close friend, Mrs. Galfetti, were proceeding down one of the aisles in the supermarket, Mrs. Galfetti in front, pushing their baskets. Plaintiff was close to the display counter, but did not touch it in the area from which the can fell. She suddenly felt something strike her on the shoulder, causing a sharp pain which made her cry out. Looking around, she saw that several cans of beans had fallen from the shelf

and were on the floor. Mrs. Galfetti confirmed that Mrs. Dindo had made a brief outcry and appeared to be doubled up in pain when she turned around, and that more than one can had fallen. She added that the large cans had been stacked four high on the shelf, and were difficult for her, a five-foot-tall woman, to reach. One of the store employees, Charles Duprey, came over and asked if Mrs. Dindo was all right and she answered that she thought so. The two women completed their shopping, though they did not remember how long they stayed in the store or how much merchandise they bought, paid for their groceries and left. When she got home, Mrs. Dindo found that she had a can of beans in her bundle, though she did not remember picking one out. She inferred that one of the cans had fallen into her shopping cart.

Duprey, the employee who went over to Mrs. Dindo after the accident, testified for the defense. He said that he was walking down the aisle behind Mrs. Dindo and Mrs. Galfetti, and was about twenty-five feet from them when he saw a can fall off and strike her on the shoulder. Only one can fell, according to him. Duprey reported the incident to the assistant manager, who asked Mrs. Dindo whether she was all right, receiving an affirmative answer. He heard no outcry, and did not see her double up. Duprey went around the corner of the display rack, and saw that some packages of tea, which were stacked next to the beans facing the next aisle, had been pushed over onto the beans. As he walked around the corner, he heard a man's voice saying "oh, excuse me," and saw someone walking away from the tea area. He straightened the packages out, and then rearranged the beans. Duprey stated that he measured the top shelf, and found that it was 54 inches from the floor. As he recalled the shelf, the cans of beans were stacked three high, but

he conceded that there might have been another layer, as Mrs. Galfetti had testified. Thus, if there were four cans, the top can might have fallen about eighteen inches, since each can was 5½ inches high and Mrs. Dindo was 5′4″ tall (allowing about a foot for the height of her head and neck).

Charles Owen, the store manager, also stated that the top shelf was 54 inches from the floor. He said that the cans were normally stacked only three high, with a piece of cardboard after the two bottom cans to add stability, and four deep on the shelf. He did not know whether the cardboard was in place at the time. There was a rib between the beans and the tea packages, but it was only about three inches high. He agreed that sometimes customers could not reach the top can on the top shelf. Owen said that the falling of a can from the shelf might be caused by a customer pushing the merchandise from the opposite aisle, or by vibrations from the cellar.

■■ We think the jury was warranted in drawing an inference that defendant was negligent in stacking the heavy cans so high, without a higher divider between the cans and the tea packages on the other side. For this conclusion, it was not necessary to rely on the *res ipsa loquitur* doctrine, admittedly inapplicable here. Marsigli v. C. W. Averill Co., 123 Vt. 234, 185 A.2d 732 (1962).[1] This doctrine may come into play only if there is no direct evidence of the cause of an accident. See 2 Harper & James, Torts, § 19.5 (1958); Jaffe, Res Ipsa Loquitur Vindicated, 1 Buff.L.Rev. 1 (1951).

■ Duprey's testimony was a complete explanation of how the accident occurred, and there was thus direct evidence from which a jury might reasonably predicate negligence. It is true that plaintiff's counsel belittled this explanation of the accident in his argument to

1. The Marsigli decision was handed down several months after the trial of the action below, but it is nevertheless part of the Vermont law we must consider in de-

termining this appeal. Vandenbark v. Owens-Illinois Glass Co., 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327 (1941).

the jury. But the court observed in its charge that negligence might be found in stacking the cans so that they could be easily pushed over from the other side, and the jury was entitled to draw this inference. Although this explanation was produced by the defendant, the jury was nonetheless able to consider it. Defendant waived the benefit of its motion for a directed verdict at the close of plaintiff's case by introducing evidence, and there is open to review only the sufficiency of the evidence as a whole to support the verdict. See, e. g., Capital Transit Co. v. Smallwood, 82 U.S.App. D.C. 228, 162 F.2d 14 (1947); Meier & Pohlmann Furniture Co. v. Troeger, 195 F.2d 193 (8 Cir. 1952); 5 Moore, Federal Practice, ¶ 50.05, at 2322 (2 Ed. 1951); 9 Wigmore, Evidence, § 2496 (3 Ed. 1940).

■ With regard to the amount of the award, we are satisfied that the trial court did not abuse his discretion in permitting the verdict to stand. The testimony of the osteopathic physician who treated Mrs. Dindo was that the impact caused contusions and considerable pain at the time, and that this pain came back on and off. Furthermore, she suffered intercostal neuralgia in the chest area, to which the injury probably contributed. More importantly, it appears that, for over a year preceding the accident, Mrs. Dindo had been suffering from a nervous and psychiatric disorder in the nature of a severe depression, and had received electric shock therapy and drugs to combat it. She seemed to be making a good recovery, although not without setbacks. However, the accident, together with the effect of a hunting accident in which her brother had been involved shortly before, impeded her recovery severely, according to the testimony of Dr. Dunleavy, the osteopath, and her husband, herself and Mrs. Galfetti. She became more nervous and morose, could not perform her housekeeping duties adequately, and also felt pains in her chest and arms up to the date of trial. The force of this testimony is weakened, to be sure by the testimony of Dr. Young, Mrs. Dindo's psychiatrist, that she did not mention the accident to him for almost two years, until December 12, 1961, when she mentioned that settlement negotiations were in progress. He could not evaluate the effect of the accident on her mental and emotional state with any accuracy at all, though it had some adverse effect on her condition. However, we think the jury was warranted in finding that Mrs. Dindo suffered an aggravation of her existing nervous and psychiatric condition, as well as a physical handicap and might assess damages accordingly.

■■ The remaining points may be briefly disposed of. Defendant moved for a mistrial after plaintiff's counsel asked Owen: "Someone did come to see you then and in reply to this report that you made, did they not?" and received the answer "the insurance company." It is, of course, reversible error deliberately to inject the fact of insurance, whether on direct or cross-examination. Ryan v. Barrett, 105 Vt. 21, 162 A. 793 (1932); Hutchinson v. Knowles, 108 Vt. 195, 184 A. 705 (1936); Bliss v. Moore, 112 Vt. 185, 22 A.2d 315 (1941); McCutcheon v. Leonard, 114 Vt. 38, 39 A.2d 348 (1944); Wilbur v. Tourangeau, 116 Vt. 199, 71 A.2d 565 (1950). However, the specific question asked required only a yes or no answer, and the witness voluntarily brought in the insurance company. We do not think that defendant's charge that "counsel's insistent badgering of this witness was for the deliberate purpose of getting such an answer," is necessarily sustained by the record. The trial judge did not so feel, and his ruling was not an abuse of discretion.

■ Also asserted as grounds for reversal were two remarks in plaintiff's counsel's closing address. Testimony had been elicited from Owen that he made out a report the morning after the accident, based on information furnished him, in triplicate, that he sent two copies to company headquarters and retained one which he destroyed after the store moved into a new building, along with all

the other records. In his summation, counsel stated that "the statements that were made at the particular time this woman was hurt, sent to the company, that they have all been burned \* \*" At this point, defense counsel interrupted, stating that the evidence was that only the retained copy had been burned. Plaintiff's counsel accepted this correction, but then said that, nonetheless after a "writ had been brought against them, that they deliberately, carelessly or otherwise burned the records bearing on this particular case." Another objection was interposed, but the court allowed the argument, on the ground that "the evidence is that the record of the manager of, in the store was burned." We think the jury understood that only one copy was burned, and that while counsel's language was strong, it did not amount to reversible error.

■ Shortly after this, counsel commented, "I ask you a question, each and every one of you, how much would you pay if you were like that, to get out of that." Defense counsel objected, the court said "that is probably correct," and plaintiff's counsel agreed immediately to withdraw the argument and proceeded along the line of "how much is it worth to a human being?" Under the circumstances, any error in the remark was cured, and hence such decisions as Duchaine v. Ray, 110 Vt. 313, 6 A.2d 28 (1939) and Callaghan v. A. Lague Express, 298 F.2d 349 (2 Cir. 1962), are not applicable. Defense counsel did not press the trial court for further action.

■ Finally, appellant complains that the judge's instructions left to the jury the issue of assessing damages for future pain, suffering and mental distress and future medical expenses arising out of the accident. Dr. Dunleavy testified that Mrs. Dindo might require his care for the shoulder condition for at least a year, and his bill for treatments rendered up to that time was in evidence. We think this provided a sufficient basis for the instructions on this point.

Judgment affirmed.